FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

APR 0 5 2004

*Robert M. March*
CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

JESSE TORREZ,

     Plaintiff,

vs.                                Civ. No. 03-0739 RHS

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed December 16, 2003 [Doc. No. 11]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, age 34, alleges a disability which commenced February 26, 2001 due to hearing loss, high blood pressure, post-traumatic stress disorder, and chronic pain. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") also denied the applications, concluding that Plaintiff retains the ability to perform a full range of light work, and that he is, therefore, not disabled according to the "grids." The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).



At the time of the Commissioner's final decision, claimant was 33 years old, with a high school education.  His past relevant work experience was as a construction worker.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

Plaintiff argues that the ALJ's finding that Mr. Torrez's complaints of pain and functional limitations are not credible is erroneous.  He also contends that the ALJ's use of the "grids" to determine he was not disabled was erroneous.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

At the first four levels of the evaluation, the claimant must show:  (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past.

At step five, the burden shifts to the Commissioner to show that the claimant has a

residual functional capacity ("RFC") to do work in the national economy other than past
relevant work. Thompson at 1487 (citations omitted). The Medical-Vocational Guidelines
("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404,
Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various
residual functional capacity ("RFC") levels by incorporating administrative notice of
occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the
Commissioner in determining what specific job types in the national economy the claimant can
perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an
exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

        The ALJ denied benefits at step five, concluding that although Mr. Torrez was unable
to return to his past work, which required heavy physical exertion, Plaintiff retained the ability
to perform a full range of light work. The ALJ applied the grids which directed a finding of
not disabled for someone of Plaintiff's age, education and past work experience. Accordingly,
the ALJ found that Plaintiff was not entitled to either SSDI or SSI benefits.

        Plaintiff testified at the hearing that he was 33 years old, graduated from high school
and had worked primarily as a concrete form setter. Tr. at 37, 40. He stated that he suffered
from headaches and ringing in his ears, shortness of breath, coughing, chest pain, muscle and
joint pain, numbness, swelling, blurred vision, decreased hearing, constant pain in his right
leg, high blood pressure, diabetes, anxiety and depression. Tr. at 40-56.

        The transcript of proceedings in this case is 370 pages long. The majority of the
documents are medical records which reflect that Mr. Torrez has complained of severe
myalgia, night sweats, fevers, chest pain, and what doctors described as mild to moderate
arthralgias. Tr. 230, 234, 250, 259, 260, 424. Plaintiff has been diagnosed with sarcoidosis

with myositis and arthritis, insulin dependant diabetes mellitus, hypertension, chronic pain post

fracture, possible reflex sympathetic dystrophy, chronic fatigue, depression and anxiety. Tr.

168, 169, 172, 175, 196, 236, 276, 391, 400, 403.   The medical record also includes reports

from a non-examining state agency psychologist and non-examining physicians who reviewed

the claimants medical history. Tr. at 331-357.

**First Allegation of Error**

Plaintiff contends that the ALJ's pain and credibility findings are contrary to the evidence

and the law. The ALJ found that " the claimant's allegations regarding his limitations are not well

supported by the medical evidence as a whole and are not fully credible." Tr. at 25.

A claimant's subjective allegation of pain is not sufficient in itself to establish

disability. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (citation omitted).

Before the ALJ need even consider any subjective evidence of pain, the claimant must first

prove by objective medical evidence the existence of a pain-producing impairment that could

reasonably be expected to produce the alleged disabling pain. Id. (citing Luna v. Bowen, 834

F.2d 161, 163 (10th Cir. 1987); accord, Winfred v. Chater, 92 F.3d 1017, 1020 (10th Cir.

1996). If a "loose nexus" is established between the proven impairment and the claimant's

subjective allegations of pain, then the ALJ determines whether, considering all the evidence,

both objective and subjective, claimant's pain is in fact disabling. Id. The ALJ is then

required to consider all the relevant objective and subjective evidence and "decide whether he

believe[s] the claimant's assertions of severe pain." Id

The ALJ noted that Plaintiff gave inconsistent reports to his doctors, that he

complained of hearing loss although he had minimal hearing loss in one ear and normal

hearing in the other, that his orthopedic surgeon found his complaints of pain to be out of

proportion to his injury and that he complained of trauma from his service in the Persian Gulf when he actually had never been to the Persian Gulf. Tr. at 23-24. A finding of noncredibility can properly be based on claimant's inconsistent answers to some questions and fact assertions that are at odds with the medical evidence in the case. See Eggleston v. Bowen, 851 F.2d 1244, 1246-47 (10th Cir. 1988). There is ample evidence in the record that Plaintiff has better range of motion and strength, hearing and eyesight than his testimony would indicate.

Although the ALJ's assessment of Plaintiff's exertional limitations, hearing and vision has support of substantial evidence, his rejection of Mr. Torrez's testimony concerning his nonexertional pain and mental limitations does not. While the Court recognizes that the medical record in this case is voluminous and complex, a finding that Plaintiff's testimony is not credible because it conflicts with medical evidence requires the ALJ to accurately evaluate all of that evidence. Several of the clinical findings which the ALJ found to be in conflict with Plaintiff's testimony are not supported by the record.

The ALJ states that Plaintiff's sarcoidosis is asymptomatic based one evaluation, although the record also includes other complaints of chest pain, coughing and shortness of breath. A November 18, 2000 letter from Octavio Saiz, M.D. which states that Plaintiff suffers from "sarcoidosis...with myositis and arthritis" appears to contradict that statement. Furthermore, the ALJ's decision states that Mr. Torrez needs a yearly follow-up for his sarcoidosis, Tr. at 21, but the doctor actually advised Plaintiff to have a repeat pulmonary function test and a chest x-ray "within the next few weeks." Tr. at 429.

The ALJ's summary of the medical evidence regarding Plaintiff's allegedly chronic pain notes that "on May 13, 2002,...Dr. Lahey felt that Mr. Torrez's complaints were way out of proportion to the injury." Tr. at 23. Dr. Lahey actually stated... "pain way out of

proportion to injury. He may be experiencing a reflex sympathetic dystrophy of the right

foot." The ALJ failed to mention that Plaintiff subsequently received anesthesia pain block

injections and prescriptions for narcotic pain medications, Tr. at 391, 392, 398, which appears

to indicate that the prescribing physicians believe his pain is real and grounded in objective

medical evidence. See Easthouse v.SShalala, 877 F. Supp. 561 (D.Kan. 1995).

        Finally, the ALJ stated that on August 6, 2002, Mr. Torrez told his VA psychiatrist,

Dr. Irene Ortiz, "that he had experienced severe pressure while in Saudi" and "that he had

witnessed a suicide while in the Persian Gulf." Tr. at 23. The record of that visit actually

states that Plaintiff "was sent to Saudi, but the plane was immediately returned to Germany,"

that he had "nightmares of Desert Storm," and that he had "seen [a] suicide." Tr. at 423. On

that visit, Dr. Ortiz increased Plaintiff's antidepressant medication, evaluated his treatment

response as poor and recommended that hospitalization be considered. Id. Dr. Ortiz's

evaluation, recommendation and prescription were not discussed in the ALJ's decision.

        The Court acknowledges that the ALJ is entitled to discount Plaintiff's testimony.

Limon v. SShalala, 884 F.Supp. 1481, 1486 (D.Colo. 1995) (citing Musgrave v. Sullivan, 966

F.2d 1371, 1376 (10th Cir.1992)). However, the ALJ cannot ignore other objective evidence

favoring Mr. Torrez simply because he has already found plaintiff not credible. Ignoring such

evidence violates both the ALJ's duty of inquiry, Henrie v. U.S. Dept. of Health & Hum. Serv.,

13 F.3d 359, 361 (10th Cir. 1993), and the prohibition on picking through the record for isolated

bits of evidence. Id. (citation omitted).

        The ALJ's discussion of Plaintiff's credibility is based, in part, on misstatements of the

evidence. For that reason, the Court must remand this case to the Commissioner for further

proceedings in which the ALJ either accepts Plaintiff's testimony concerning his pain and other

nonexertional limitations, or ties an adverse credibility determination to substantial evidence in the record.

**Second Allegation of Error**

Plaintiff contends that the ALJ's use of the grids was a legal error in this case. Application of the grids is appropriate only if the claimant is capable of performing the full range of work required at a particular exertional level on a daily basis and if the claimant possesses the physical capacity to perform most of the jobs falling within that category. Ragland v. Shalala, 992 F. 2d 1056, 1058 (10th Cir. 1993). Where a claimant's exertional capacity is further restricted by nonexertional limitations, however, reliance on the grids is misplaced. Id.

In light of the Court's finding that the ALJ's credibility determination was unsupported, it follows that conclusive application of the grids may be improper. Since it remains to be determined whether the ALJ had grounds for discounting Mr. Torrez's nonexertional impairments, the ALJ's step-five analysis, which excluded them, cannot stand. On remand, the ALJ must tie an adverse credibility determination to substantial evidence in the record. If the ALJ is unable to do so, the testimony of a vocational expert will be required.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing , filed December 16, 2004 is GRANTED. On remand, the ALJ shall properly assess credibility in light of the medical evidence in the record.

_Robert H. Scott_

ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE